166 So. 40

**CORAL GABLES, Inc., v. PATTERSON.**

**3 Div. 142.**

Supreme Court of Alabama.

Jan. 23, 1936.

Rehearing Denied March 5, 1936.

Ball & Ball, of Montgomery, for appellant.

Stevens, McCorvey, McLeod, Goode &
Turner, of Mobile, for appellee.

THOMAS, Justice.

A bill by Coral Gables, Inc., successor in title to Coral Gables Corporation, for specific performance of an agreement to purchase lots 1 to 7 of block 20 of the Biltmore Section of Coral Gables, according to the plat indicated.

The "Contract for Deed," entered into by complainant's predecessor in title, Coral Gables Corporation, with William A. Kolar, recites: "This Agreement, made and executed in duplicate this 24th day of August, A. D., 1925, by and between Coral Gables Corporation * * * as the party of the first part, and William A. Kolar * * * as the party of the second part," stipulating that the payments be made in installments, and in the event of payment, "the said first party agrees to convey to said second party by good and sufficient Warranty Deed, free of all incumbrances, other than such as may have been placed thereon by or through said second party, subject however to the conditions, limitations and restrictions hereinafter set out," the lots specifically described. The recited consideration was that of a cash payment and notes payable in monthly installments, extending to August 24, 1928. That agreement as exhibited contained many conditions, limitations, and restrictions, which are material as affecting a purchaser in the sale or improvement of the lots to which they apply, and concluded: "This Agreement shall be mutually binding upon the heirs, personal representatives, successors and assigns of the parties hereto, and the term party shall include parties. *Time is the essence of this contract.*" (Italics supplied.) It is further provided, in the agreement of which specific performance is sought, that certain designated remedies were expeditious and suited to the conditions of real estate sales, viz.: (1) Acceleration of the whole debt "recoverable at law" on default of any payment, together with court costs and reasonable attorney's fees incurred in collecting same; (2) that "in case of such default this contract shall become null and void, at the option of the party of the first part, and in event of the exercise of such option to declare the contract null and void, the party of the first part shall have the right to reenter and retake possession of said premises and resell the abovementioned property and all payments that may have been made hereunder previous to such default shall be forfeited to the party of the first part as liquidated damages, to the extent of twenty-five per cent. of the purchase price herein provided for, plus one per cent. per month of such purchase price for each month from date hereof to date of exercise of said option to cancel this contract, plus court costs and reasonable attorney's fees incurred in clearing the title to the property covered hereby, should this instrument be recorded or in any way be made a lien upon said property or cloud upon said title"; (3) that "this contract *may be foreclosed in equity in manner provided and customary for the foreclosure of mortgages in said Dade County,* and all rights of the party of the second part either at law or in equity pertaining to the property covered hereby or this contract itself *may be sold under such foreclosure";* and (4) that "in the event of such foreclosure, the first party may at its option apply for and have appointed by a court of competent jurisdiction, a receiver to take charge of said real estate and of all the rents, incomes and profits therefrom, notice of such application for the appointment of such receiver and service of process in relation thereto being hereby waived by the second party." (Italics supplied.)

It will be noted that some of these reserved rights are unusual; as that stipulating for damages (contrary to our decisions as to specific performance, Fuller et al. v. Totten, 222 Ala. 174, 131 So. 435; Alabama Water Co. et al. v. City of Anniston, 227 Ala. 579, 151 So. 457; Pearce v. Third Ave. Improvement Co., 221 Ala. 209, 128 So. 396), and that for benefit of foreclosure of mortgage according to the Dade county, Fla., rule.

It is insisted by appellee that the ancient maxim, "Expressio unius est exclusio alterius" (Co.Litt. 210a; Black's Law Dictionary, p. 463), would exclude a resort in equity for specific performance; the purchaser not being in possession of the land. Henderson v. Morton, 109 Fla. 300, 147 So. 456. That is, the contract was carefully drawn for expeditious recapture of the land, and did not look to the enforcement of a vendor's rights in a court of chancery by specific performance, with its more deliberate procedure. In 66 C.J. p. 1361, § 1362, note 64, and in Marian

Coal Co. v. Peale (C.C.A.) 204 F. 161, 164–166, it is stated that remedies available only because of the contract and stipulated therefor are exclusive as indicated by the expressed intent of the parties. Fidelity Ins., etc., Co. v. Lichten, 11 Pa.Dist.R. 517, 28 Pa.Co.Ct.R. 17. This view is strengthened by the rule in this court that a vendor is not entitled to specific performance of an agreement to sell land for the collection of principal and interest, and also for damages for the purchaser's failure to perform as per contract stipulations. Fuller et al. v. Totten, 222 Ala. 174, 131 So. 435; Pearce et al. v. Third Ave. Improvement Co., 221 Ala. 209, 128 So. 396; Alabama Water Co. et al. v. City of ·Anniston, 227 Ala. 579, 151 So. 457. However, this court has held that a contract stipulating that payments made on default will be treated as rentals and not defeat specific performance. George E. Wood Lumber Co. v. Morris et al., 225 Ala. 281, 142 So. 508.

The "Contract for Deed" purports to have been assigned on December 18, 1925, by William A. Kolar and wife to H. H. Patterson. The assignment contained the following:

"This assignment will be delivered upon the payment of the note for $11,-000 due ninety days from December 11, 1925, and the payment of the note for $11,000 due one hundred twenty days from December 11, 1925. Also upon the payments of the ten notes for $766.13 each and one note for $766.18, which are paid in eleven consecutive quarterly payments, first payment becoming due February 24, 1925.

"Now, therefore, this indenture witnesseth, That the said assignor for and in consideration of the sum of Ten Dollars ($10.-00) this day received by him, and other valuable considerations does hereby sell, assign, transfer and set over unto the assignee herein, the above recited agreement for deed and all the right, title and interest of the said assignor in and to the said agreements for deed and in and to the lands therein and herein particularly described.

"To have and to hold the same unto the said assignee, his heirs, executors, administrators and assigns forever; subject, nevertheless, to the terms, conditions and stipulations in said agreements contained.

"And the said assignee herein hereby covenants and agrees with the assignor

that he will pay the balance of the said purchase price now remaining unpaid under said agreements for deed, and in the manner provided in said agreement, and will observe and perform all the terms, conditions and stipulations in the said agreement mentioned which are thereunder by the party of the second part therein to be observed and performed, and will save harmless and keep indemnified the said assignor herein against all claims, demands and actions by reason of the failure of the said assignee herein to observe and perform all the conditions of said agreements."

Though recorded as provided for such an instrument, its terms indicate that it was not to be held as an effective delivery to Patterson until the several stipulated payments were made to William A. Kolar—on or before January, 1926.

█ Appellant insists upon the rule that in a proper case a vendor may enforce payment of the purchase price in a bill for specific performance, and the fact that the land is in another state is no objection, if both parties are within the jurisdiction of the court (George E. Wood Lumber Co. v. Morris et al., 225 Ala. 281, 142 So. 508); and such remedy is enforceable by and against privies in the contract. Goodlett v. Hansell, 66 Ala. 151; Taylor v. Newton et al., 152 Ala. 459, 44 So. 583; Donald v. Reynolds, 228 Ala. 513, 154 So. 530.

Chandler v. Bodeker, 219 Ala. 357, 122 So. 435, held the necessary pleading for a bill for specific performance must show a valid and enforceable contract exists, terms thereof, due performance by complainant on his part, or sufficient excuse for nonperformance, accompanied ' with averments showing complainant's ability and willingness to perform, and that a due and seasonable offer to perform was made on his part up to the time of the purchaser's refusal to carry out the contract. Fuller et al. v. Totten,·222 Ala. 174, 131 So. 435.

It is averred that in June, 1929, a successor to Coral Gables Corporation (the original payee of Kolar), Coral Gables, Inc., became the owner of the contract and promissory notes referred to in the pleading, and is the owner thereof and of said lots 1 to 7, block 20, Biltmore Section of Coral Gables, subject to the rights therein of said Kolar and Patterson, as set forth in said contract for deed, to which we have referred; that its demand for payment was made and re-

·fused, and its final demand was made and documents tendered to invest respondent .with title, in December, 1934. The averments of such demand and tender are. as follows:

"That on to-wit December 5, 1934, complainant tendered to the said Patterson (1) a certified copy of letters patent changing the name of Coral Gables Corporation to Garalco Corporation, and (2) of a warranty deed from said Garalco Corporation to Fluvia Corporation conveying said lots, (3) the warranty deed from said Fluvia Corporation to this complainant conveying to it said lots, (4) a release of said lots from a mortgage covering said lots which had been made by Coral Gables Corporation to Biscayne Trust Company, (5) offered to produce and deliver to him any other instruments to which he might be entitled, (6) at the time stating to him that complainant was able, ready and willing to comply with any and all of the terms of said agreements on its part, and (7) also tendered to him a warranty deed properly executed by it to convey to him said lots, and made demand on him for payment of the amount for which he was liable under the terms of said contracts for deeds and said 'indenture of assignment' set forth as Exhibit C hereto; that said Patterson stated to complainant's representative at that time that he acknowledged said tender and made no point of objection thereto, but declined to pay the demand, and has never paid any part thereof except as hereinabove set forth.

"Complainant avers that all of the conditions, covenants and obligations which under the aforesaid contracts for deed the vendor was obligated to perform, have been kept and performed, and that it is ready, able and willing to convey to the said defendant, H. H. Patterson, by good and sufficient warranty deed, free of all encumbrances other than such as may have been placed thereon by or through the said William A. Kolar and/or the defendant herein, subject, however, to the conditions, limitations, and restrictions set out in the said contracts for deed, all those certain lots," etc. ·

There is no averment in the bill that such demand and efficacious tender was made by the owner of the notes and property at date of maturity of the last purchase-money note, and the date when complainant's predecessor in title engaged "to convey to said second party by good and sufficient warranty deed, free of all incumbrances, other than such as may have been placed thereon by or through said second party," etc.

■ If it be conceded that this is a case for specific performance, it will be noted that the bill does not aver full compliance on the part of the parties to the contract between Kolar and Patterson, nor a delivery of the assignment of agreement for deed. These are material acts, required of and necessary to a right of action by the original parties and the successor in title of the Coral Gables Corporation; necessary to the maintenance of such a bill in a case where such right obtains.

■ This court takes judicial knowledge of the depression and its effect upon values between the years 1925 and 1934. Hodge et al. v. Joy et al., 207 Ala. 198, 92 So. 171. Here, time was expressly made the essence of the contract, as it so materially affected the property rights under former conditions of sale of such properties. The time of required consummation of the contract, as it affected the respective rights and duties of such subsequent vendors and vendees, assignors and assignees, must be tested and adjudged as of date of August 24, 1928. That is, in a case where specific performance would lie, there must have been the ability, willingness, and readiness on the original vendor's part (Coral Gables Corporation, predecessor in title to complainant) to a full and lawful consummation on August 24, 1928, the date of maturity of the last note which invested Kolar or Patterson with a good and sufficient title, as per the terms of the contract of date of August 24, 1925.

■ We have indicated that the bill discloses the existence of a mortgage on the property given by the Coral Gables Corporation to Biscayne Trust Company; does not indicate when it was executed, the amount, when due, or the terms and conditions thereof; does not allege a release therefrom was duly and seasonably executed and tendered. The bill, construed most strongly against the pleader, is subject to the assumption that at the time due and seasonable tender was required to be made, or at the time of the averred tender and demand for payment (December, 1929), the vendor could not convey a perfect title. And *it will not be assumed,* under the pleading employed, that the property was released from the mortgage when final and full performance of the contract was required. At that *moment* the vendor, or its successor in title or interest, was required

by the law of the contract (where time was the essence of that contract) to duly and seasonably comply.

In Pomeroy's Specific Performance of Contracts (3d Ed.) § 340, p. 742, § 362, p. 773, and § 401, pp. 846, 847, it is declared:

"*. * * if a vendor cannot give a good title, and deliver possession at the time specified in the agreement, he cannot obtain a decree of specific execution against the purchaser in a case where time is essential; that is, where completion of the contract and delivery of possession at the stipulated time are material to 'the purchaser, and he is then ready and willing to accept the conveyance and pay the price." Section 340, p. 742.

"In all those contracts where the time of payment by the vendee is essential and not simply material, and a fortiori in those where, if the vendee's payments are not made upon the exact day named, the vendor may treat the agreement as at an end, the vendee must make an actual tender of the price and a demand of the deed at the specified time, as a condition precedent to his maintaining a suit. The same is true of the vendor when the time of his conveyance is made essential. This rule is involved in the very notion of time being of the essence of the contract." Section 362, p. 773.

" * * * In short, if time is essential, the same strict rule prevails in equity as at law, and the party who has stipulated to do an action at a specified time, must do it at that time, or he loses all his remedial rights in a court of equity as well as in a court of law. No such circumstances will excuse his failure and preserve his rights, as will avail to account for his delay in a case where time is simply material. Nothing will serve as an excuse, except the same class of events 'beyond the reach of human control, which will dispense with an exact performance of any term of any contract—such event as an act of God, or perhaps an inevitable accident—or such events as will furnish a ground in equity for discharging the obligation of all agreements, such as fraud or substantial mistake, or the default or procurement of the other party." Section 401, pp. 846, 847.

The text of 58 C.J. p. 1089, § 355, is to like effect.

Mr. Elliott, in his Contracts, thus states the rule:

" * * * But where time is of the essence of the contract, specific performance will not be decreed to one who has omitted to execute his part of the contract within the time fixed in the contract. Where time is made the essence of the contract for the sale of land, a delay of over two years after the maturity of the last instalment of the purchase-price is such laches on the part of the vendor as will preclude him from specifically enforcing the contract." Section 2330, p. 509, Elliott on Contracts.

"Neither party to a contract will be permitted to enforce it specifically against the other until he has shown that he has done, or offered to do, or is ready and willing to do, all acts required of him in the execution of the contract in accordance with its terms and conditions." Section 2331, p. 510, Elliott on Contracts.

This last statement of the text is on the authority of Pensacola Gas Co. v. Provisional Municipality of Pensacola, 33 Fla. 322, 14 So. 826.

The Supreme Court of Florida thus applies the rule:

"At law, in such cases, time is generally held to be of the essence of the contract; but, in addition to this, the parties here have expressly made the time stipulated for the performance of their mutual obligations an essential feature of this contract. The plaintiffs, in order to recover, must therefore have been thus ready, able, and willing to convey such perfect title promptly at the time expressly stipulated. * * *

"By the contract of purchase and sale between the parties, it became the duty of the plaintiffs promptly to tender a perfect title to the whole of the lot contracted for; and as before seen, the case being at law, the time fixed for compliance with the contract was essential. The plaintiffs not being prepared then promptly to make to the defendant a perfect title, he, under the circumstances here, was justified in rescinding the contract, by refusing to pay the agreed purchase price." Frazier et al. v. Boggs, 37 Fla. 307, 20 So. 245, 247–249.

█ This result is from the nature of the respective covenants of the parties. To illustrate, when the vendee is to pay upon installments, the obligations of the parties are *independent* until the last installment is due, *when each party's obligation became dependent. The law disregards the moment when the respective obligations are mutual and dependent.* Neither party can compel performance without at such time performing or tendering full performance. Any de-·

656

lay on the part of a vendor in the performance of such dependent covenant to make a perfect title would release the vendee contracting therefor and who had the right to avail himself of the other's default when the vendor thereafter sues for performance.

On this phase of the case Mr. Elliott says: "In the case of numerous stipulations in a contract some may be dependent and others independent, according to their nature and the order of their performance. Whether the covenants in any case are to be held dependent or independent of each other is determined by the intention and meaning of the parties as it appears from the contract. There is an example of these two kinds of conditions in a contract for the sale of land where the purchase-money is to be paid in instalments falling due in different years and the deed is to be executed at the time of the last payment. Here the stipulations to pay the first instalments are independent and the stipulation to pay the last instalment and to execute the deed are mutually dependent conditions. The courts generally lean toward considering the condition to be dependent or conditional where the thing to be done on one side is the condition for the thing to be done on the other, and this is more especially the case where money is to be paid for something done or delivered when it could not be supposed that the intention of the parties was that the money was to be paid without performance by the other party." Section 2047, pp. 231, 232, Elliott on Contracts (3d Ed).

The later Florida decisions are to like effect. Sun City Holding Co. v. Schoenfeld, 97 Fla. 777, 122 So. 252, 254, held that where covenants are dependent, one party should not be required to pay money in strict performance of his covenant, and the other cannot or will not perform his part of the material acts which are to be concurrently done, and which go to the entire consideration that supports the promise to pay the other party; "otherwise the purchaser, although compelled to pay the purchase price, would not receive what he stipulated to purchase." Walker v. Close, 98 Fla. 1103, 125 So. 521, 126 So. 289; Woods-Hoskins-Young Co. v. Dittmarr, 102 Fla. 1000, 136 So. 710; Harper v. Bronson, 104 Fla. 75, 139 So. 203; Henderson v. Morton, 109 Fla. 300, 147 So. 456. In Walker v. Close, supra, the decision is concluded as follows: "A very marked distinction between (1) the right of a vendee, after a contract has been executed by a conveyance of the land, and (2) his right, while the contract is in the executory state, is that in the first case defects in the title, which expose him to the hazard of litigation or the threat of litigation, do not generally entitle him to any relief against his vendor. It is otherwise, if he is under an executory contract; the vendee in such a contract will not be required to accept the conveyance of a title so clouded by defects as to expose him to the hazard of litigation, or which may require him to resort to litigation, in order to clear his title from outstanding claims or defects. 57 A.L.R. 1300." 98 Fla. 1103, 125 So. 521, 528, 126 So. 289.

The rule of M. W. Walker v. L. L. Hewitt, 109 Or. 366, 220 P. 147, 35 A.L.R. 100, was rejected in Harper v. Bronson, 104 Fla. 75, 139 So. 203, 208, and this was indicated in Henderson v. Morton, 109 Fla. 300, 147 So. 456. In the last-cited case it was declared, as to the last note as well as recovery of the whole sum, after all the notes had become due, to be held that plaintiff must allege and prove tender of deed, or an offer to perform all of the vendor's covenants under an executory land sales contract. The Chief Justice says: "In an action at law between vendor and vendee, vendor who has not performed his own dependent covenants, or tendered performance of them, so as to entitle him to demand payment of the purchase price of land contracted to be sold by an executory sales contract, is not entitled to have judgment against his vendee for the unpaid balance of the purchase price, and this objection may be shown by an appropriate plea setting up such defense to an action on promissory notes which have been given in connection with the land sales contract to represent installments of the purchase price, when the suit on the promissory notes is for recovery of the sum of all the notes, after maturity, or after all have become due by their acceleration under the terms of the contract." 109 Fla. 300, 147 So. 456, 458.

It may be further observed that the Florida courts have declared that the enforcement of a contract to convey land by the remedy of specific performance will not authorize a deficiency judgment for the balance of the debt. R. E. L. McCaskill Co. et al. v. Dekle, 88 Fla. 285, 102 So. 252; McCormick v. Bodeker, 119 Fla. 20, 160 So. 483.

Other cases from that jurisdiction are to the effect that tender of the deed by the vendor *as required by the contract* is gen-erally a necessary prerequisite to a suit by him for specific performance, unless some valid excuse is shown for failure to make such tender. This is especially applicable where the *stipulations are mutual and dependent*—where the deed is to be delivered upon payment of the purchase price. But such tender may be conditional upon performance by the other party of the agreement to pay the amount due on the purchase price. Booth, Adm'x., et al. v. Bobbitt et al., 94 Fla. 704, 114 So. 513.

Where a party *is not reasonably diligent* in asserting his claim for specific performance of a contract for the sale of lands, *the delay* may render it inequitable to enforce his claim, though it is otherwise meritorious. Nobles v. L'Engle et al., 61 Fla. 696, 55 So. 839; DeHuy v. Osborne et al., 96 Fla. 435, 118 So. 161.

One must be active and diligent in the assertion of a claim for the specific performance of a contract for the sale of land. Hatchcock v. Société Anonyme La Floridienne et al., 54 Fla. 631, 45 So. 481.

In specific performance, no general rule, applicable to all cases, as to what will and what will not constitute laches can well be formulated. The existence or absence of laches in a given case must be deduced from the facts of that particular case upon consideration of all the circumstances involved. DeHuy v. Osborne et al., supra.

In the case of R. E. L. McCaskill Co. et al. v. Dekle, 88 Fla. 285, 102 So. 252, the third, fourth, and fifth headnotes read as follows:

"3. The remedy by specific performance is mutual as between the vendor and the vendee, and, where this remedy is sought by the vendor, it makes no difference that the relief obtainable thereby enforces payment by the vendee of the agreed purchase price.

"4. In a suit by the vendor for the specific performance of a contract to convey land, where, in accordance with the terms of the decree, the land is sold and the proceeds applied in part payment of the purchase price, no lien being involved, the entry of a deficiency decree for the balance is unauthorized.

"5. The enforcement in equity of performance of a contract to convey land is not a matter of course like the right to enforce a lien in equity or to recover a judgment at law, but rests in the sound discretion of the court, controlled by well-established doctrines of equitable jurisprudence."

In the opinion in the above case the following paragraph appears: "Furthermore, the enforcement of a contract in equity is not a matter of course, like the right to recover a judgment at law, but rests in the sound discretion of the court, controlled by well-established doctrines of equitable jurisprudence. Where to do so would be harsh, inequitable, and against good conscience, specific performance will not be decreed." R. E. L. McCaskill Co. et al. v. Dekle, 88 Fla. 285, 295, 102 So. 252, 255.

Under the bill as framed, and the contract making time as the essence thereof, there was noncompliance on complainant's part, and it would be incompatible with the rules that obtain to maintain the bill; it being without equity.

The judgment of the circuit court, in equity, is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.